**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE<br>    JEFFREY S. DAVIDSON,<br>                    Debtor. | Chapter 7<br>Case No. 23-11130 |
| JOHN B. CARNETT, IV.,<br>                    Plaintiff,<br>v.<br>JEFFREY S. DAVIDSON,<br>                    Defendant. | Adversary Proceeding<br>Case No. 24-90011 |

**NOTICE OF APPEAL**

Jeffrey S. Davidson, Defendant and Appellant, appeals under 28 U.S.C. §158(a) from the Decision and Order Denying Defendant-Debtor's Discharge Pursuant to 11 U.S.C. §727(a)(4) entered on September 24, 2025 (Dkt. No. 75) (Exhibit "A").

The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

<u>John B. Carnett, IV,  Plaintiff, *pro se*</u>
John B. Carnett, IV.
95 Salem St.
Greenwich, NY 12823
215-834-0365

<u>Jeffrey S. Davidson, Defendant</u>
Elizabeth Fairbanks-Fletcher, Esq.
Fairbanks Fletcher Law PLLC
178 Elm St., Ste. 4
Saratoga Springs, NY 12866
518-581-8600

Dated: October 8, 2025

Respectfully submitted,

/s/ Elizabeth Fairbanks-Fletcher 513317
_____
Elizabeth Fairbanks-Fletcher, Esq.
Fairbanks Fletcher Law PLLC
178 Elm St., Suite 4
Saratoga Springs, NY 12866
518-581-8600

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    JEFFREY S. DAVIDSON,

                              *Debtor*.

Case No. 23-11130
Chapter 7

JOHN B. CARNETT, IV,

                              *Plaintiff*,

    v.

JEFFREY S. DAVIDSON,

                              *Defendant*.

Adv. P. No. 24-90011

APPEARANCES:

John B. Carnett, IV
*Pro se Plaintiff*
95 Salem Street
Greenwich, New York 12834

Elizabeth Fairbanks-Fletcher, Esq.
Fairbanks Fletcher Law PLLC
*Bankruptcy Counsel for Defendant*
178 Elm Street, Suite 4
Saratoga Springs, New York 12866

James W. Hyde, IV, Esq.
Law Offices of James W. Hyde, IV
*Trial Counsel for Defendant*
P.O. Box 262
Wells, New York 12190

Robert E. Littlefield, Jr., United States Bankruptcy Judge

-1-

**MEMORANDUM DECISION AND ORDER**

Currently before the Court is an adversary proceeding filed by John B. Carnett, IV (the "Plaintiff") objecting to the discharge of Jeffrey S. Davidson (the "Defendant") in the underlying bankruptcy case.[1] There is also an oral motion to dismiss the adversary complaint. The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[2] Venue is proper pursuant to 28 U.S.C. § 1409(a).

**FACTS**

I.   **Personal Loan**

The present dispute stems from an agreement by and between the Plaintiff and Defendant. On April 26, 2022, the Plaintiff loaned the Defendant $20,160.00. AP No. 1 at 6. In return, the Defendant executed a promissory note for $21,000.00 made due and payable on July 26, 2022. *See* Plaintiff Exhibit 1.[3] The Defendant failed to pay back the loan before July 26, 2022, though both sides acknowledge that the Defendant did make payments towards the balance. *See* AP No. 1 at 6–9 (indicating that the Defendant remitted several payments of varying amounts to the Plaintiff beginning in 2023).

On October 31, 2023, the Plaintiff filed a complaint against the Defendant in New York State Supreme Court regarding the loan. *See John B. Carnett, IV v. Jeffrey Scott Davidson*, Index

---

[1] Citations to the docket of the bankruptcy proceeding (Case No. 23-11130) will be referenced as "ECF No. #;" citations to the docket of the adversary proceeding (Case No. 24-90011) will be referenced as "AP No. #."

[2] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2025) (the "Bankruptcy Code").

[3] Exhibits proffered by the Plaintiff and entered into the record will be referenced as "Plaintiff Exhibit #." *See* AP No. 69 (providing a list of exhibits). The Defendant did not proffer any exhibits.

No. EC2023-36149 (N.Y. Sup. Ct. Oct. 31, 2023). No subsequent action has been taken in that matter. *See id.*

## II. Bankruptcy Filing

The Defendant filed the underlying Chapter 7 bankruptcy case on November 3, 2023. ECF No. 1. In his Schedule E/F, the Defendant listed the Plaintiff as having an unsecured claim valued at $12,021.49. ECF No. 1 at 30.

Shortly after filing the bankruptcy, the Defendant filed an adversary proceeding against the Plaintiff to determine the dischargeability of the debt. *See Jeffrey S. Davidson v. John B. Carnett, IV*, Case No. 23-90018 (Bankr. N.D.N.Y. Dec. 4, 2023). The adversary proceeding was dismissed without prejudice on February 9, 2024, for lacking a sufficient basis.[4] *See id.*

On January 19, 2024, the Plaintiff moved for an extension of time to object to the Defendant's discharge. ECF No. 23; *see also* ECF No. 27. The Defendant opposed the motion. ECF No. 26. The Court held hearings on the matter on February 7 and 27, 2024, before issuing an interim order extending the Plaintiff's time to object to March 27, 2024. ECF Nos. 28, 34–35. On March 22, 2024, the Court further extended the Plaintiff's time to object to April 11, 2024. ECF No. 43. On April 11, 2024, the Court granted a final extension of time to May 3, 2024. ECF No. 45.

## III. Adversary Proceeding

### A. Complaint

On May 2, 2024, the Plaintiff filed this adversary proceeding against the Defendant. AP No. 1. On June 3, 2024, the Defendant moved to dismiss the adversary. AP No. 3. The Plaintiff

---

[4] The adversary complaint indicated that it was "an action pursuant to 11 U.S.C.A. §523 . . . to determine the dischargeability of [Carnett's claim]." *Jeffrey S. Davidson v. John B. Carnett, IV*, ECF No. 1 at 1 (Bankr. N.D.N.Y. Dec. 4, 2023). However, the complaint did not provide what subsection of § 523 was being invoked or any analysis of the relevant law. *See id.*

-3-

filed opposition to the motion, to which the Defendant replied. AP Nos. 7, 9. After a hearing on the motion, the Court dismissed Counts I–IV of the complaint but retained Count V regarding 11 U.S.C. § 727(a)(4)(A). AP Nos. 10–11. The Defendant subsequently filed his answer to the complaint. AP No. 12.

On April 8, 2025, the Court issued an amended order scheduling an in-person trial for June 6, 2025.[5] AP No. 62. On May 28, 2025, the parties submitted pre-trial statements. AP Nos. 65–66. On June 6, 2025, the Court held the trial and placed this matter on reserve.[6] *See* AP No. 70.

### B.  Oral Motion to Dismiss

At the trial, the Defendant moved to dismiss the adversary proceeding for lack of sufficient evidence pursuant to Federal Rule of Civil Procedure 52. AP No. 70 at 2:55:40; *see* Fed. R. Civ. P. 52. The oral motion was also placed on reserve. *Id.* at 3:07:55.

### ARGUMENTS

The Plaintiff argues that the Defendant "failed in the Statement of Financial Affairs attached to his Petition to properly report his true income." AP No. 1 at 15. This, according to the Plaintiff, is because the Defendant failed to account for his use and transfer of funds from his business for personal gain. *Id.*

Meanwhile, the Defendant maintains that his Statement of Financial Affairs and other schedules accurately reflect his actual income. Nevertheless, the Defendant raises affirmative defenses that any alleged false oath or account would be insufficient to warrant denial of his

---

[5] Between the filing of the Defendant's answer and the Court's scheduling of the trial, there were various disputes between the parties concerning discovery. *See, e.g.,* AP Nos. 21, 26, 36, 42–43. Those issues were resolved and a further recitation of same is not necessary for this decision.

[6] The Plaintiff filed a post-trial brief on June 13, 2025. AP No. 72. Because the Plaintiff was not granted leave to file the brief, it was not accepted or considered. *See* AP No. 73 (holding same).

discharge. AP No. 12 at 3–4. In support of dismissal, the Defendant argues the Plaintiff has failed to carry his burden.

# DISCUSSION

## I. Denial of Discharge

Pursuant to the Bankruptcy Code, the Court may deny the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

> To prove a § 727(a)(4)(A) violation, a creditor must show that: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case."

*Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009) (quoting *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000)); *see also Abraham v. Stuart (In re Abraham)*, 693 F. App'x 59, 61 (2d Cir. 2017) (quoting same). "The Plaintiff bears the burden of establishing each element of § 727(a)(4)(A) by a preponderance of the evidence." *Fido's Fences, Inc. v. Bordonaro (In re Bordonaro)*, 543 B.R. 692, 702 (Bankr. E.D.N.Y. 2016) (citing *Colish v. United States (In re Colish)*, 289 B.R. 523, 536 (Bankr. E.D.N.Y. 2002)). Denial of a debtor's discharge under § 727 is "an extreme penalty" and therefore "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting *In re Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976)); *see also Levine v. Raymonda*, Adv. P. No. 99-91199, 2001 Bankr. LEXIS 2374, at *5 (Bankr. N.D.N.Y. Feb. 9, 2001) (likening the denial of discharge to "the death penalty of bankruptcy").

### A. Statement Under Oath

The first factor in the Court's analysis can be readily determined.

> Statements under oath include statements in documents filed with the Bankruptcy Court which are made under penalty of perjury, such as the bankruptcy schedules and [Statement of Financial Affairs] filed with the petition, as well as statements by the debtor during examinations under oath, such as testimony during the meeting of creditors held pursuant to § 341(a).

*Capital One Equip. Fin. Corp. v. Singh (In re Singh)*, 585 B.R. 330, 336 (Bankr. E.D.N.Y. 2018) (citing *In re Moreo*, 437 B.R. 40, 61 (Bankr. E.D.N.Y. 2010)). Here, the statement in question is the Defendant's reporting of his income in his Statement of Financial Affairs.

Over the course of his bankruptcy proceeding, the Defendant has amended his Statement of Financial Affairs several times. *See* ECF Nos. 16, 21, 50. Nevertheless, each iteration of the statement was signed under the penalty of perjury and therefore satisfies the first factor.

### B. Falsity of Statement

The Court must next determine whether the statement in question is false. "Under [S]ection 727(a)(4)(A)'s second element, '[o]missions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes.'" *City of Atlantic City v. Drummon (In re Drummon)*, Case No. 24-cv-1668, at *14 (S.D.N.Y. May 7, 2025) (quoting *Adler v. Ng (In re Adler)*, 395 B.R. 827, 841 (E.D.N.Y. 2008)). "A statement is false if . . . it omits even one asset or source of income . . . ." *Lisa Ng v. Adler (In re Adler)*, 494 B.R. 43, 75 (Bankr. E.D.N.Y. 2013).

In the most recent version of the Defendant's Statement of Financial Affairs, he indicated that, from January 1 to November 3, 2023, he earned $15,972.00 in wages commissions, bonuses and tips and $0.00 from operating a business. ECF No. 50 at 2. The previous versions of the statement include the same values. *See* ECF Nos. 1, 16, 21.

However, the bank records from the Defendant's business, Jeff Davidson Stone LLC[7], clearly contradict this. According to the bank statements, the business issued approximately thirty-nine checks to the Defendant from January to April 2023 totaling approximately $25,065.43. *See* Plaintiff Exhibit 8. Certain checks indicate that they were written for the purpose of "OWNER PROFIT WITHDRAW." *See* Plaintiff Exhibit 2. On other checks, the endorsement line includes the Defendant's signature as well as his personal checking account number.[8] *Id.* In addition, the bank statements show that the Defendant initiated approximately four electronic transfers between the business account and his personal account during this time period for a net of approximately $600.00. *See id.*

Thus, it is clear the Defendant's recitation of his 2023 income is facially false. The Defendant stated that he had received $0.00 from operating a business in 2023. ECF No. 50 at 2. Even if the Defendant believed these disbursements fell under his reported wages, commissions, etc., his income would still have been understated by $9,693.43 ($25,065.43 in checks plus $600.00 in electronic transfers less $15,972.00 in reported income).[9]

To further complicate matters, the Defendant indicates in his Schedule I that he had been employed as a highway foreman for the Town of Castleton for four months prior to filing the bankruptcy case. ECF No. 1 at 42. In this role, the Defendant indicated that his monthly take-home pay was approximately $3,480.10. *Id.* at 43. Thus, it would appear the Defendant had two sources of income in 2023 but only reported one.

---

[7] ~~According to the Defendant, J~~eff Davidson Stone LLC is in the process of "winding up." ECF No. 50 at 12.

[8] The account number ends in x7520, which matches the checking account listed by the Defendant in his Schedule A/B. ECF No. 1 at 14.

[9] It is also noteworthy that the bank statements only cover the period from January to April 2023, meaning that the Defendant may have received additional disbursements from May 2023 to the time of the bankruptcy filing.

Also of note are certain transactions that raise additional questions as to the veracity of the Statement of Financial Affairs. For instance, there are several ATM transactions from the business account for which the Court cannot discern a purpose or beneficiary. *See* Plaintiff Exhibit 8. Similarly, there are numerous transactions on the business account that would appear to be for personal—rather than business—purposes. These include, for example, purchases at The Alpine Sports Shop and Sugarbush Resort. *See* Plaintiff Exhibit 8.

There are also a variety of charges related to the Defendant's Venmo account, which is connected to the business's bank account. *See* Plaintiff Exhibits 7–8. The Defendant acknowledged that he would sometimes use Venmo to pay his workers. *See* Plaintiff Exhibit 14 at 62–67; Plaintiff Exhibit 15 at 68; *see also* AP No. 70 at 1:18:25 (indicating that certain Venmo payments to workers, despite unclear descriptors such as "musical taste rehabilitation" and "butt cheek implants," were legitimate business transfers). However, there are numerous transactions to non-employees for things such as "Liz's soccer session," "Kids Cell Phones" and "Ass Kickings." *See* Plaintiff Exhibit 7. If these transactions were for personal reasons, there is an argument to be made that the funds constitute additional income.

The ATM transfers, miscellaneous purchases, and Venmo transactions all suggest that the Defendant was using the business bank account for personal purposes. Determining which transfers were wholly personal and whether they constitute a form of income for the Defendant would require further hearings.[10] However, the Court need not delve into this issue at this time. Based upon the checks and account transfers, the Defendant's statement of his 2023 income is false; the real question is how much greater the Defendant's income was than what he reported.

---

[10] Tracing these transactions and determining whether they were executed for a valid business purpose requires additional factfinding, even if they are suspicious on their face.

As such, the Court finds the Defendant's Statement of Financial Affairs includes a false statement.[11]

### C. Knowingly False

"The knowledge requirement is satisfied by showing that 'the bankrupt knows what is true and, so knowing, willfully and intentionally swears to what is false.'" *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 62 (E.D.N.Y. 2010) (quoting *In re Kaufhold*, 256 F.2d 181, 185 (3d Cir. 1958)). Here, the Court finds that it would be impossible for the Defendant to not have known his 2023 income was incorrect. It would be one thing if the Statement of Financial Affairs listed some income from operating a business and the Defendant was simply unaware of the exact amount. But when a debtor claims to have received *zero* income from their business while prolifically writing checks and executing transactions from the business account, it cannot be chalked up to mere oversight. Thus, the Debtor had the requisite knowledge to know his income from operating a business was not zero and willfully swore to the opposite.

### D. Fraudulent Intent

"Fraudulent intent may be shown through circumstantial evidence or inferences from a course of conduct, all surrounding circumstances, and any evidence of a course of conduct." *Darwin (Huck) Spaulding Living Trust v. Carl (In re Carl)*, 517 B.R. 53, 69 (Bankr. N.D.N.Y. 2014) (citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983)).

> Fraudulent intent can be established by a showing of . . . the debtor's reckless disregard for the truth of his statements. Reckless disregard for the truth is analyzed by considering the following factors: (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors of

---

[11] The bank account history for the period of March to December 2022 suggests that the Defendant may have also misrepresented his 2022 income. *See* Plaintiff Exhibit 8.

carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.

*Jiao v. Fan (In re Fan)*, 656 B.R. 666, 687–88 (Bankr. E.D.N.Y. 2024) (citing *In re Singh*, 585 B.R. at 338–39) (internal citations omitted).

"It has long been law that the privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of its financial affairs." *In re Chalasani*, 92 F.3d at 1309 (citing *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936)). "Trustees and creditors are entitled to truthful and complete disclosures in a debtor's schedules and statement of financial affairs so that they may conduct their own investigation of a debtor's affairs." *O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122, 129–30 (Bankr. E.D.N.Y. 2011). In this case, the failure to provide accurate answers in the Statement of Financial Affairs has obscured the Defendant's true financial position which in turn is detrimental "to the effective functioning of the bankruptcy system." *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008).

In his Statement of Financial Affairs, the Defendant indicates that Mohan & Mohan Tax Services, Inc. performed the accounting and bookkeeping for Jeff Davidson Stone LLC. ECF No. 50 at 12. However, the Defendant himself is still financially sophisticated. Jeff Davidson Stone LLC began operations in March 2020. *Id.* Prior to that, the Defendant operated Upstate Rock, LLC from August 2013 to June 2020. *Id.* According to the Defendant, he also handled certain business expenditures on his own by using the business bank account, signing checks and initiating Venmo transactions. *See* Plaintiff Exhibits 2, 7–8. At the very least, the Defendant is financially sophisticated enough to know his income from business operations was not $0.00 in 2023.

The Defendant was asked about many of these questionable transactions both during his deposition and at trial. *See* ECF No. 70; Plaintiff Exhibits 5, 14–15. For most of these questions, the Defendant simply answered that he did not recall the transaction in question. *See id.* The Court

finds this response—or lack thereof—not credible. It would be one thing if the Defendant had difficulty recalling a small number of transactions. But it is another thing altogether for the Defendant to claim no recollection of a significant number of transactions made by or attributable to him, especially when evidence of said transactions is provided. Also relevant is the fact that the Debtor amended his Statement of Financial Affairs *three times* yet never adjusted his income from business. "A failure to amend schedules can give rise to an inference of fraud, as well as a series of incorrect statements and omissions of fact." *In re Fan*, 656 B.R. at 688 (citing *In re Singh*, 585 B.R. at 339). Here, the Defendant was given ample opportunity to shed light on these transactions and his reported income yet failed to do so.

For these reasons, it is apparent that the Defendant acted with a reckless disregard for the truth of his statements, from which this Court infers fraudulent intent.

### E. Material Relation to the Bankruptcy

"An item is material if it is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property.'" *In re Moreo*, 437 B.R. at 65 (quoting *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 230 (E.D.N.Y. 2000)). "Materiality is a low threshold." *In re Carl*, 517 B.R. at 70. It "merely requires a showing that the relevant information was something that creditors and the trustee reasonably would have regarded as significant in identifying the assets of the estate that could be liquidated and used to satisfy claims . . . ." *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 754 (Bankr. S.D.N.Y. 2017). "[M]ateriality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974) (citing *Morris Plan Industrial Bank v. Finn*, 149 F.2d 591, 592 (2d Cir. 1945)).

The Defendant's failure to properly account for his 2023 earnings falls within the realm of material. By failing to accurately list his income, the Defendant portrayed an image of his finances that may have dissuaded further investigation by interested parties. His use of the business's bank account for personal expenditures may have also created intrigue among the creditors and trustee, who may have wished to explore the possibility of bringing said assets into the fold of the bankruptcy estate. And as stated previously, this was no small discrepancy; the Defendant omitted thousands of dollars from his Statement of Financial Affairs. Therefore, the false statement satisfies the materiality requirement.

### F. Shifting the Burden

Typically, "[o]nce the moving party meets its initial burden to produce evidence of a false statement, the burden of production shifts to the debtor to produce a 'credible explanation.'" *In re Moreo*, 437 B.R. at 59 (quoting *Casa Invs. Co. v. Brenes (In re Brenes)*, 261 B.R. 322, 334 (Bankr. D. Conn. 2001)). Here, the Defendant has provided no argument for why his 2023 income was misstated. The Defendant did not proffer any evidence for the Court to consider or call any witnesses at trial. *See* AP No. 70. Defense counsel did not even cross-examine the Defendant, who was the only witness called. Nor did the Defendant deem it appropriate to make a closing statement or take the opportunity to submit a post-trial brief. AP No. 70 at 3:04:55–3:07:20. As such, the Court finds that the Defendant has failed to satisfy his burden in providing a credible explanation for his false statement.

### II. Oral Motion to Dismiss

Because the Court has found the Plaintiff satisfied the pleading requirements for § 727(a)(4)(A), the oral motion to dismiss is denied.

-13-

## CONCLUSION

The veracity of a debtor's schedules and financial statements is imperative to ensure all parties involved in a bankruptcy proceeding are informed and can collaborate in good faith. Here, the Defendant has made a false oath or account in connection with his bankruptcy case and has failed to provide adequate reasoning for same. Thus, the Court finds the Defendant violated § 727(a)(4)(A). Now, after due deliberation and for the reasons stated herein, it is hereby

**ORDERED**, that the Defendant is denied a discharge pursuant to 11 U.S.C. § 727(a)(4); and it is further

**ORDERED**, that the Defendant's oral motion to dismiss is denied.

Dated: September 24, 2025
Albany, New York

/s/ Robert E. Littlefield, Jr._____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge